**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE METE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| | ) | Jury Trial Demanded |
| SEARS HOLDINGS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, Nicole Mete, by and through her attorneys, Pedersen & Weinstein LLP, for her Complaint against Defendant, Sears Holdings Corporation ("Sears" or "Defendant"), states as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action under the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), to challenge Defendant's unlawful discrimination against her based on her sex and pregnancy. Plaintiff also asserts claims pursuant to the Family and Medical Leave Act ("FMLA").

**JURISDICTION AND VENUE**

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343 and principles of pendent and supplemental jurisdiction.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4. Plaintiff, Nicole Mete, was formerly employed by Defendant. Plaintiff began her employment in February 2010 and was unlawfully terminated in May 2013.

5. Defendant, Sears Holdings Corporation, is a retail operation with over 2,600 full-line and specialty retail stores in the United States and Canada. It operates through its subsidiaries, including Sears, Roebuck and Co. and Kmart Corporation, and maintains its headquarters in Hoffman Estates, Illinois.

6. At all times relevant to this Complaint, Defendant employed more than fifty (50) employees and was engaged in an industry affecting commerce.

**FACTUAL ALLEGATIONS**

*Background*

7. Plaintiff began working for Defendant as a recruiter in February 2010. Although she was based in Illinois, Plaintiff was responsible for recruiting field management for K-Mart stores in her assigned region, which included California, Oregon, Washington and later North and South Dakota.

8. Given the nature of Plaintiff's role, she often worked from home where she could perform virtually every function of her job. Indeed, throughout her tenure, Plaintiff was allowed to work from home with more and more frequency until she was eventually told that she only needed to be in the office for face-to-face meetings, which occurred approximately once or twice a week, if at all. In other words, there were weeks when Plaintiff did not need to go in at all.

*Defendant Subjected Plaintiff To Pregnancy Discrimination*

9. Plaintiff's work schedule was not unique to her; all of Defendant's recruiters with similar positions worked primarily from home, whether they were based near Defendant's

headquarters or out of state. In fact, only a few of Defendant's recruiters lived a commutable distance from its headquarters, demonstrating that Defendant recognized that recruiters need not be physically present at headquarters to perform their jobs.

10. These terms and conditions of Plaintiff's job changed, however, after she announced her pregnancy and need for FMLA leave, and just weeks before her maternity leave was scheduled to begin. More specifically, in or around February 2013, Plaintiff's supervisors, Jen Kupres ("Kupres") and Chris Jemo ("Jemo"), told her that when she returned from maternity leave, she would be required to start working in the office four days a week. Plaintiff was shocked by this sudden and substantial change to her job, particularly since none of her duties were changing and the requirement appeared to apply only to her. The only thing that had changed was that Plaintiff was pregnant and planning to take maternity leave, leading her to believe that these factors, and not a legitimate business need to have her work onsite, motivated Defendant to impose this new requirement.

11. When Plaintiff questioned her supervisors about why she was being singled out, they told her that they were going to "talk to" other recruiters about working in the office and that all recruiters would be required to work at Defendant's headquarters in Hoffman Estates. This was false. As Defendant admitted in its position statement submitted to the U.S. Equal Employment Opportunity Commission, the only other recruiters who lived a commutable distance from Defendant's headquarters were never required to work in Hoffman Estates. Defendant simplistically claims these two recruiters, who are similarly situated to Plaintiff with the exception that they had not just returned from FMLA leave, were "grandfathered" from the requirement of working at headquarters.

12. Defendant's admission that it "grandfathered" the only other recruiters who lived a commutable distance from Hoffman Estates out of the requirement that they work in the office demonstrates not only that Defendant lied to Plaintiff about the new requirement, it also undermines its justification for requiring recruiters to work in the Hoffman Estates office. More specifically, Defendant previously claimed that working from the Hoffman Estates office would result in "better teamwork, collaboration and idea sharing." This explanation is obviously pretextual given that Plaintiff would be the only recruiter working in Hoffman Estates, and, therefore, would have no one with whom to collaborate or share ideas. Defendant's explanation is further undermined by the fact that all other recruiters who did not live within a commutable distance of Hoffman Estates also worked from home.

13. Plaintiff began her maternity leave in early March 2013 and hoped that Defendant would reconsider its decision to change her job so drastically, particularly since it knew that with the added commute, she essentially would be taking a pay cut to cover the cost of gas and tolls.

14. Despite her concerns, Plaintiff prepared to return to work and arranged for in-home child care, but also tried discussing her concerns with Defendant before her actual return date. Toward that end, Plaintiff tried to set up a meeting with Kupres to discuss her return to work, but Kupres declined to meet with her. Instead, Kupres simply instructed Plaintiff to email her the days she would be in the office and what hours she would work.

15. When Plaintiff finally spoke to Kupres by phone, she reiterated her concerns about the job change, the hardship it would cause her, and expressed the fact that as a practical matter, she would not be able to continue working if Defendant did in fact change her job. Plaintiff also discussed the fact that she was breastfeeding and planned to express breast milk for her baby when she returned to work. Plaintiff explained that it would be much more efficient for

her to pump at home where she could continue to work, as compared to working in the office where she would have to stop working while she went to the designated area for nursing mothers to pump. Nonetheless, Defendant refused to allow Plaintiff to return to the same schedule she had been working for approximately two years. Accordingly, Plaintiff was forced to resign her employment in May 2013 because of the financial impact the drastic change in her job would cause.

16. In addition to how it treated Plaintiff, Defendant's negative view of women who have children and take maternity leave was also evidenced by negative comments from upper management. For example, in reference to an employee who was pregnant at the same time as Plaintiff, Sherry Nolan-Shultz ("Nolan-Shultz"), Jemo's boss and one of Plaintiff's superiors, encouraged another employee to learn the pregnant employee's job, even though the pregnant employee planned to return to work. When this was pointed out to Nolan-Shultz she responded, "Oh, they never come back," in reference to female employees who take maternity leaves. Nolan-Shultz's comment is further evidence of Defendant's animus against pregnant employees.

***Defendant Violated The Family And Medical Leave Act***

17. In addition to the discrimination described above, Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her for taking a leave of absence. Plaintiff believes that if she had not been pregnant and about to take a leave of absence under the FMLA, Defendant would not have changed her job so significantly that she was forced to resign.

18. Defendant's conduct otherwise violates the FMLA because it refused to place Plaintiff into the same position she had before her leave.

***Defendant Failed To Exercise Reasonable Care To Prevent And Correct Unlawful Conduct***

19. Defendant's management directed, encouraged, and participated in the above-

described unlawful conduct. Further, Defendant failed to exercise reasonable care to prevent and correct promptly any discrimination. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

20. The discrimination described above was consistent with Defendant's standard operating procedure.

21. Defendant acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

*Plaintiff Timely Filed A Charge Of Unlawful Discrimination*

22. Plaintiff timely filed a charge of unlawful discrimination with the EEOC. Plaintiff has requested and received her Notice of Right to Sue.

*Plaintiff Suffered Damage*

23. As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

24. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

25. Plaintiff's career and reputation have been irreparably damaged as a result of Defendant's unlawful conduct.

26. Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

*Punitive Damages*

27. Defendant acted and/or failed to act with malice or willfulness or reckless

indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

28. Plaintiff realleges paragraphs 1 through 27 and incorporates them by reference into Count I of this Complaint.

29. Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of gender, including on the basis of pregnancy, childbirth, or related medical conditions.

30. By the conduct as alleged herein, Defendant subjected Plaintiff to gender discrimination in violation of Title VII.

## COUNT II

### UNLAWFUL CONDUCT IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

31. Plaintiff realleges paragraphs 1 through 30 and incorporates them by reference into Count II of this Complaint.

32. The FMLA entitles eligible employees to a 12-week leave during any 12-month period for a serious health condition. Plaintiff was an eligible employee.

33. The FMLA also entitles any employee who takes such a leave to be restored to her former position or an equivalent position with equivalent terms and conditions of employment as her former position.

34. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Act.

35. By its conduct as alleged herein, Defendant violated the FMLA.

36. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT III

### RETALIATION IN VIOLATION OF THE
### FAMILY AND MEDICAL LEAVE ACT

37. Plaintiff realleges paragraphs 1 through 36 and incorporates them by reference into Count III of this Complaint.

38. The FMLA makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice it makes unlawful. Similarly, the FMLA makes it unlawful for any employer to discharge or discriminate against anyone for taking part in proceedings or inquiries under the FMLA.

39. By its conduct as alleged herein, Defendant violated the FMLA.

40. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate Title VII and the FMLA;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d. In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e. Award Plaintiff compensatory damages;

      f.      Award Plaintiff punitive damages;

      g.      Award Plaintiff liquidated damages;

      h.      Award Plaintiff prejudgment interest;

      i.      Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

      j.      Award Plaintiff such other relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: June 5, 2014                                        Respectfully submitted,

                                                          By:

                                                          *s/Jill Weinstein*

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
55 E. Jackson Blvd., Suite 510
Chicago, Illinois 60604
(312) 322-0710
(312) 322-0717 (facsimile)